UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

UNITED STATES OF AMERICA,

**ORDER**
16-CR-406 (MKB)

- against -

MONICA VARGAS,

Defendant.

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On June 29, 2017, Defendant Monica Vargas pled guilty to one count of conspiracy to

traffic heroin in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(i) and one count of

conspiracy to commit kidnapping in violation of 18 U.S.C. § 1201(a)(1) and (c). (Indictment,

Docket Entry No. 1; Min. Entry dated June 29, 2017, Docket Entry No. 76.) On October 4,

2018, the Court sentenced Vargas to ninety-six months of imprisonment to be followed by four

years of supervised release. (J., Docket Entry No. 158.)

On August 3, 2020, Vargas, proceeding *pro se*, filed a motion for compassionate release

seeking either a "sentence reduction to time served or [release to] home confi[n]ement or to

probation with or without a condition of home confinement pursuant to [18 U.S.C.

§] 3582(c)([1])([A])(i)" based on a COVID-19 outbreak at Federal Medical Center, Carswell

("FMC Carswell"), where she is incarcerated, and arguing that underlying medical conditions

place her at heightened risk of severe illness should she contract COVID-19 in custody.[1] (Def.'s

---

[1] The Court appointed counsel to assist Vargas with her motion on August 5, 2020, and
again on October 20, 2020. (Appointment of Attorney, Docket Entry Nos. 224, 233.) By letter
dated November 29, 2020, Vargas supplemented her motion with a letter and medical records,
and reemphasized that she is concerned about contracting COVID-19 given the high number of

Mot. to Reduce Sentence ("Def.'s Mot.") 1, 3, Docket Entry No. 223.)[2]  The government

opposes Vargas's motion, arguing that she has not shown extraordinary and compelling reasons

warranting her release and that, in any event, the 18 U.S.C. § 3553(a) factors warrant her

continued detention.  (Gov't Mem. in Opp'n to Def.'s Mot. ("Gov't Opp'n") 1, Docket Entry No.

249.)

For the reasons discussed below, the Court denies Vargas's motion.

## I.  Background

### a.  Guilty plea and sentencing

In June of 2014, Vargas and others were members of a Queens, New York-based heroin

trafficking crew that imported heroin from Ecuador and distributed it throughout the New York

City area.  (Presentence Investigation Report ("PSR") ¶ 6, Docket Entry No. 123.)  Vargas's son

and codefendant, Gonzalo Erick Aguilar Vargas ("Aguilar"), was the leader of the group.  (*Id.*)

Vargas introduced her son to the drug trafficking business and connected him with the crew's

drug source in Ecuador, CC-1.  (*Id.*)  CC-1 would mail packages of heroin every few weeks to

parcel stores in Brooklyn and Queens, where members of the crew, including Vargas and John

Doe #1, would pick up the drugs and distribute them to various dealers, including CC-2.  (*Id.*)

---

cases at her facility and her medical conditions.  (Letter dated Nov. 29, 2020 ("Def.'s Suppl. Letter") 1, Docket Entry No. 235.)  In addition, she noted that she is enrolled in the Spanish Residential Drug Abuse Program.  (*Id.* at 2.)  On March 8, 2021, appointed counsel requested time to speak with Vargas about her motion, (Letter as to Monica Vargas, Docket Entry No. 240), and the Court granted the request, (Order dated Mar. 9, 2021).  By letter dated March 24, 2021, counsel informed the Court that Vargas did not intend to submit additional briefing. (Letter dated Mar. 24, 2021, Docket Entry No. 242.)  The Court directed the government to respond to Vargas's motion, and the government filed its response on May 13, 2021.  (Order dated May 6, 2021; Gov't Mem. in Opp'n to Def.'s Mot. ("Gov't Opp'n"), Docket Entry No. 249.)

[2]  Because Vargas's motion is not consecutively paginated, the Court refers to the page numbers assigned by the electronic case filing system.

Vargas and others would then pick up drug proceeds from CC-2 and wire a portion of the drug proceeds to their contacts in Ecuador. (*Id.*) Vargas also recruited others to wire drug proceeds to contacts in Ecuador. (*Id.*)

On February 6, 2015, John Doe #1 was arrested after picking up a heroin parcel at a parcel store in Queens. (*Id.* ¶¶ 7, 11.) Shortly after he was released from custody, he told Aguilar that he had thrown the heroin parcel on the ground when the police were chasing him, and Aguilar demanded that they meet to discuss the lost parcel. (*Id.* ¶¶ 11–12.) When John Doe #1 and his girlfriend Jane Doe #1 went to meet Aguilar, they were forced into a car where Vargas and another member of the crew were waiting. (*Id.* ¶ 13.) The car drove to Union City, New Jersey, where Vargas, who had her baby with her in the back seat, dropped off her baby with her husband. (*Id.*) During the drive, John Doe #1 told Vargas that he had run from the police, dropped the drug package, and gotten away. (*Id.*) Vargas called CC-1 in Ecuador and expressed anger at John Doe #1 for losing the package, telling him that CC-1 was going to kill his family, including his mother who lived in Ecuador. (*Id.*) After Vargas had dropped off her baby, the car returned to Queens, New York, and parked on a secluded street, where other members of the crew threw John Doe #1 to the ground and violently beat him. (*Id.* ¶¶ 14–15.) At some point, John Doe #1 escaped and ran, and his assailants circled the block looking for him. (*Id.* ¶ 15.) Vargas stayed in the back of the car with Jane Doe #1 and told her not to leave the car. (*Id.*) When John Doe #1's assailants were unable to locate him, they returned to the car where Vargas and Jane Doe #1 were, forced Jane Doe #1 into the back seat of the car and made her put a jacket over her face so that she could not see them, and then dropped her off in Queens, photographing her license and stating that if anything happened to them, they knew where she lived and would come look for her. (*Id.* ¶¶ 16–17.)

On June 29, 2017, Vargas pled guilty to one count of conspiracy to traffic heroin and one count of conspiracy to commit kidnapping, and, on October 4, 2018, the Court sentenced Vargas to ninety-six months of imprisonment to be followed by four years of supervised release. (Min. Entry dated June 29, 2017; J.) Vargas is currently serving her term of incarceration at FMC Carswell in Fort Worth, Texas, with a tentative release date of May 29, 2023. (Def.'s Mot. 3; Individualized Reentry Plan — Program Review, annexed to Def.'s Suppl. Letter, Docket Entry No. 235, at 3.)

### b. Compassionate release application

On August 3, 2020, Vargas filed a motion for compassionate release seeking either a reduction of her sentence to time served, release to home confinement, or probation with or without a condition of home confinement because "everyone of 280 inmates in her unit test[ed] positive [for COVID-19] on July 20, 2020." (Def.'s Mot. 2, 4.) In support, Vargas, who is now forty-eight years old, (*see* PSR 2), argues that "the emergency pandemic of corona virus is . . . an extraordinary and compelling reason" warranting release because she has completed nearly fifty percent of her sentence and is a first-time, nonviolent offender who "suffer[s] from high blood pressure, c[h]ronic care, [arthritis], r[h]eumatica, [and] depression, which [are] high-risk factor[s] by [Centers for Disease Control] guidelines." (Def.'s Mot. 2–3.) In addition, Vargas argues that "FMC Carswell is negligent and failed to take proper measures to ensure [her] safety" because it "does not have adequate medical staff to care for all its positive cases" and because "the [Bureau of Prisons'] procedure and protocol was not followed." (*Id.* at 3.)

The government opposes the motion and argues that Vargas's proffered reasons for release are not "'extraordinary and compelling' under 18 U.S.C. § 3582(c)(1)(A), the [U.S. Sentencing] Guidelines, or any other authority." (Gov't Opp'n 3.) In support, the government

argues that (1) "a generalized risk of potential exposure to COVID-19 cannot constitute an extraordinary and compelling reason for release," (2) "COVID-19 is well-controlled at . . . FMC Carswell," where "four inmates and no staff members currently have COVID-19,"[3] and (3) among the medical conditions Vargas lists as "high-risk factors" for COVID-19, the CDC has recognized only high blood pressure as a condition that "possibly . . . can make you more likely to get severely ill from COVID-19," and thus Vargas's medical conditions, even considered in their totality, should not be a basis for her immediate release given the low number of active cases currently at FMC Carswell.[4]  (*Id.* (quoting *Coronavirus Disease 2019 (COVID-19) — People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 13, 2021)).)  In addition, the government argues that even if Vargas has shown extraordinary and compelling circumstances warranting her release, (1) she has failed to argue that the 18 U.S.C. § 3553(a) factors warrant a sentence reduction, and (2) these factors weigh against a reduction because Vargas was an active participant in the heroin trafficking conspiracy, picking up packages for the crew, wiring proceeds to co-conspirators, and

---

[3]  The government contends that Vargas "does not allege, nor does the government understand, that [she] ever tested positive for COVID-19," (Gov't Opp'n 3), however, as noted above, Vargas states in her motion that everyone in her unit tested positive on July 20, 2020, (Def.'s Mot. 2, 4).  In addition, Vargas attached her medical records indicating that she tested positive for COVID-19 in July of 2020 to her letter supplementing her motion, to which the government has not responded.  (Medical Records 1, 13, 16–17, 19, annexed to Def.'s Suppl. Letter as Ex. 1, Docket Entry No. 235-1.)

[4]  In her letter supplementing her motion, Vargas indicates that she also suffers from obesity and panic attacks.  (Def.'s Suppl. Letter 1.)  The Court notes that obesity is also among the conditions that the CDC recognizes "can make you more likely to get severely ill from COVID-19."  *Coronavirus Disease 2019 (COVID-19) — People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 13, 2021) (emphasis omitted).

5

recruiting others to wire money to Ecuador, as well as in the kidnapping of John Doe #1 and Jane Doe #1, repeatedly threatening the lives of John Doe #1 and his family and telling Jane Doe #1 that she could not leave the car.  (*Id.* at 4.)

## II.  Discussion

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  *United States v. Gotti*, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020).  Pursuant to section 3582(c)(1)(A)(i), "a district court 'may reduce' the term of a defendant's imprisonment 'if it finds that . . . extraordinary and compelling reasons warrant such a reduction.'"  *United States v. Roney*, 833 F. App'x 850, 852 (2d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)); *see also United States v. Fernandez*, No. 20-CR-2467, --- F. App'x ---, ---, 2021 WL 1749725, at *1 (2d Cir. May 4, 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)).

Under section 3582(c), and as relevant here, courts may modify a previously imposed sentence where:

> (A)  the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of [thirty] days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that —
>
> > (i)  extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii)  the defendant is at least [seventy] years of age, has served at least [thirty] years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is

> not a danger to the safety of any other person or the
> community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable
> policy statements issued by the Sentencing
> Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i)–(ii). Thus, even if a district court decides that a movant has shown

extraordinary and compelling reasons for compassionate release, the court must also consider

whether the factors set forth in 18 U.S.C. § 3553 support release. *See United States v. Butler*,

845 F. App'x 74, 81 (2d Cir. 2021) ("[T]he district court acted well within its discretion in

concluding that, even if extraordinary and compelling circumstances existed for his release, [the

petitioner's] compassionate release motion should be denied because his release was not

consistent with the [s]ection 3553(a) factors in this case."); *Roney*, 833 F. App'x at 853 ("We

need not decide whether [the appellant] has proffered an extraordinary and compelling reason

that warrants his release . . . because, even assuming *arguendo* that he has, we discern no abuse

of discretion in the district court's conclusion that release is nevertheless unwarranted upon

consideration of the [section] 3553(a) factors.").

Although the Court takes seriously the threat posed by COVID-19 to incarcerated

individuals, and the heightened risk of complications faced by individuals, such as Vargas, who

suffer from high blood pressure and obesity, (Def.'s Mot. 2–3; Def.'s Suppl. Letter 1), the Court

finds that the requested relief is inconsistent with the section 3553(a) factors. While the Court

recognizes Vargas's efforts to engage in rehabilitation since her sentencing, (*see* Def.'s Suppl.

Letter 1 (arguing that Vargas has "changed the way [she] live[s] [her] life" and is "currently in

[the] Spanish Residential Drug Abuse Program")), Vargas was an active participant in both a

heroin trafficking conspiracy and a violent, drug-related kidnapping. (Gov't Opp'n 4; PSR ¶¶ 6,

13, 15.) In addition, the Court's ninety-six-month sentence departed downward from the U.S.

Sentencing Guidelines' range of 121 to 151 months based on Vargas's role in the offense and her post-arrest rehabilitation. (Statement of Reasons 1, 3, Docket Entry No. 159.) Vargas has served approximately fifty-six months of that sentence, and a further reduction would not adequately "reflect the seriousness of the offense, . . . promote respect for the law, [or] . . . provide[] just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

### III. Conclusion

Accordingly, for the reasons explained above, the Court denies Vargas's motion for compassionate release and denies her requests, in the alternative, for release to home confinement or to probation with or without a condition of home confinement.

Dated: May 21, 2021
Brooklyn, New York

SO ORDERED:

s/ MKB

_____

MARGO K. BRODIE
United States District Judge